Case 7:10-cv-00434-SGW-PMS   Document 50   Filed 02/11/11   Page 1 of 9
Pageid#: 480

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 11 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHIRE LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TRAVIS C. MICKLE, PH.D., et al.<br><br>    Defendants. | Civil Action No. 7:10-cv-00434<br><br>**MEMORANDUM OPINION**<br><br>By: Samuel G. Wilson<br>United States District Judge |

This is a diversity action by Shire LLC ("Shire"), a subsidiary of a large, international pharmaceutical company, against defendants KemPharm, Inc. ("KemPharm"), a small early phase biopharmaceutical company, and KemPharm's president, Travis Mickle ("Mickle") alleging several breach of contract claims against Mickle, and a claim of tortious interference against KemPharm.[1] KemPharm has moved to dismiss the tortious interference claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), on the ground that the court lacks personal jurisdiction over it, and under Rule 12(b)(3) on the ground that venue does not lie in this district under 28 U.S.C. § 1391. Alternatively, KemPharm and Mickle contend that the Southern District of Iowa is a more convenient and suitable forum, and they jointly seek to transfer the case there pursuant to 28 U.S.C. § 1404(a). The court finds that Shire has made a prima facie showing that KemPharm is subject to specific personal jurisdiction in this District and that venue is proper here, and therefore denies KemPharm's motion to dismiss. The court also finds, after

---

[1] The court's diversity jurisdiction has not been conclusively established under 28 U.S.C. § 1332. There is more than $75,000 in controversy. KemPharm is an Iowa corporation with its principal place of business in North Liberty, Iowa. Shire is a Kentucky limited liability company with its principal place of business in Florence, Kentucky. However, for diversity purposes, a LLC also has the citizenship of each of its members. See, e.g., Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 120 (4th Cir. 2004). Here, the record does not disclose who the LLC's individual members are, which is required for complete diversity. Therefore, if Shire fails to promptly disclose this information, the court will dismiss the case from the docket for lack of subject matter jurisdiction.

weighing the relevant considerations, no compelling reason to transfer the entire case to the Southern District of Iowa, and therefore denies the defendants' joint motion to transfer.

## I.

The events giving rise to this litigation began in early 2001, when New River Pharmaceuticals, Inc. ("NRP"), a Virginia corporation, hired Mickle as a senior scientist. Upon accepting the position, Mickle signed an employment agreement with NRP which provided, in part, that Mickle would not exploit confidential information he learned in the course of his employment. The employment agreement also specified that any litigation between the parties over that agreement would be conducted in the Western District of Virginia.

In 2003, NRP promoted Mickle to Director of Drug Discovery and Chemical Development. In this role, Mickle had access to information about NRP's business practices and drug development processes which NRP considered proprietary and confidential. Mickle also was designated as the first named inventor in five patents developed by NRP while he worked there.[2] Mickle later executed assignment agreements which purported to assign to NRP all of his rights to these patents, as well as his right to develop future patents based on the assigned patents.

In October 2005, Mickle decided to leave NRP. In connection with the severance, Mickle entered into a settlement agreement with NRP, which provided that Mickle would refrain from utilizing NRP's proprietary information for his own personal benefit. Later, Shire purchased NRP, closed all of NRP's Virginia facilities, and ceased operations in the state.

---

[2] These include patent application numbers 7,105,486 (filed June 1, 2004), 7,223,735 (filed June 1, 2004), 7,375,083 (filed September 30, 2004), 7,700,561 (filed April 10, 2006), and 11/080,056 (filed March 25, 2005).

One year later, Mickle incorporated KemPharm in Iowa and designated himself as its president. KemPharm, which maintains its principal place of business in North Liberty, Iowa, is an early phase biopharmaceutical company that focuses on the discovery and development of new drugs. After incorporating KemPharm, Mickle filed several patent applications in early 2007, and assigned all of his interest in them to KemPharm.

In the spring of 2007, KemPharm hired an employee residing in Virginia to conduct laboratory testing from the employee's home. Later, KemPharm entered into an agreement with the Virginia Tech Foundation to lease a research facility in Blacksburg, Virginia, beginning July 2008. The lease agreement requires KemPharm to pay applicable real estate property taxes associated with the leased facility during the lease period and gives the Virginia Tech Foundation the right to acquire equity ownership in KemPharm.

Later, KemPharm registered to do business in Virginia, appointed an agent to receive service of process here, and hired three more Virginia residents to conduct tests at the Blacksburg facility, bringing the total number of employees working there to four, including the researcher who previously worked from home. These Virginia researchers conduct tests at the direction of KemPharm employees in Iowa, and send the data from these completed tests to Iowa for further analysis. The employees at the Blacksburg facility perform research in connection with a variety of drugs, including a chemical KemPharm refers to as KP106. Shire alleges KemPharm developed KP106 using confidential information belonging to Shire, which KemPharm wrongfully obtained from Mickle.

In the instant suit, Shire alleges that Mickle's continued use of NRP's confidential and proprietary information and drug development processes (which now belong to Shire) in his work on behalf of KemPharm violates the employment, settlement, and assignment agreements

3

Mickle executed while working for NRP. Shire also claims that KemPharm tortiously interfered with these agreements by inducing Mickle to commit these alleged breaches, which are continuing in part through the activities of KemPharm's Virginia researchers.

## II.

KemPharm has moved to dismiss the tortious interference claim because the court lacks personal jurisdiction. The court finds that KemPharm has purposefully availed itself of the privilege of conducting activities in Virginia, and that Shire has set forth facts supporting its allegations that KemPharm's conduct in this forum has injured and continues to injure Shire. Accordingly, the court finds that KemPharm is subject to specific personal jurisdiction here and therefore denies KemPharm's motion.

To exercise personal jurisdiction over a nonresident defendant, the Due Process Clause requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).[3] There are two forms of personal jurisdiction: general and specific. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984); Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 213 (4th Cir. 2002). Specific jurisdiction requires that the plaintiff's cause of action arise out of, or be related to, the defendant's contacts with the forum. Helicopteros

---

[3] Personal jurisdiction in this district must be authorized by both Virginia's long-arm statute, and the Due Process Clause of the Fourteenth Amendment. See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009). Because Virginia's long-arm statute extends to the limits provided by the Due Process Clause, "the statutory inquiry merges with the constitutional inquiry." Id.; see also Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002). It is possible that, in some situations, the Due Process Clause would permit personal jurisdiction over a defendant even where Virginia's long-arm statute would not. However, the court need not address that scenario here because the statute expressly authorizes jurisdiction over an actor who "cause[es] tortious injury by an act or omission" in Virginia, and here Shire has adequately supported its allegations that KemPharm's tortious conduct may have occurred within the state.

4

Nacionales de Columbia, 466 U.S. at 414 n.8. The plaintiff bears the burden of making "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005).

In deciding whether the court has specific personal jurisdiction, the court applies a three-part test in which it considers: "(1) the extent to which the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the [forum] State; (2) whether the plaintiffs' claims arise out of those activities directed at the [forum] State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (internal citations omitted). The purposeful availment prong requires the court to look at a number of factors, such as whether the defendant maintains offices or agents in the forum state, whether the defendant owns property in the forum state, and whether the defendant deliberately engaged in significant or long term business activities in the state. See Consulting Eng'rs, 561 F.3d at 278 (providing a non-exhaustive list of factors for courts to consider). The second prong requires that the defendant's contacts with the forum form the basis of the suit. Id. at 278-79. The third prong requires the court to consider additional factors to ensure that the forum in question is appropriate, including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Id. at 279 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

The court takes these considerations into account, and finds that it has specific jurisdiction to hear Shire's claim against KemPharm. For purposes of determining specific jurisdiction, the question is not, as KemPharm seems to suggest, whether the tort Shire alleges

5

(which essentially distills to a conspiracy or jointly undertaken activity between a corporation and its president to interfere with Shire's contract with the corporation's president in his individual capacity) makes sense or fits neatly within the parameters of tortious interference with contract.[4] That inquiry is the province of a motion filed pursuant to Rules 12(b)(6) or 56. Rather, the question for specific jurisdiction is whether Shire has alleged purposeful conduct in Virginia sufficient to hale KemPharm into court here, and whether it has supported its allegations with evidence of jurisdictional facts. Shire has alleged that KemPharm's employees in Virginia are engaging in conduct that interferes with Shire's contracts with Mickle. Shire has supported its allegations with an affidavit stating that KemPharm was conducting research at its Blacksburg facility related to the chemical entity KP106. Shire alleges KP106 was developed by KemPharm using information wrongfully obtained from Mickle. Consequently, there is evidence that KemPharm's employees in Virginia are engaging in conduct in Virginia that is injuring Shire, a sufficient jurisdictional fact to support specific personal jurisdiction here. Whether KemPharm's "purposefully availing" conduct is, indeed, tortious is a matter for another day.

For these reasons, the court finds that Shire has sufficiently shown that its tortious interference claim against KemPharm arose, or continues to arise, at least in part, out of KemPharm's activities in Virginia. Accordingly, the court finds that there is specific personal

---

[4] In Virginia, tortious interference consists of the following elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing the breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

Century-21 v. Elder, 239 Va. 637, 641 (1990) (citation omitted).

jurisdiction over KemPharm in the Western District of Virginia as to Shire's claim, and denies KemPharm's motion to dismiss.

### III.

KemPharm has moved to dismiss the case on the ground that venue is not proper in this district pursuant to 28 U.S.C. § 1391. However, the court finds that the same facts that establish the court's specific personal jurisdiction over KemPharm also demonstrate that "a substantial part of the events or omissions giving rise to the claim occurred" in Virginia. See 28 U.S.C. § 1391(a)(2). Accordingly, the court finds that venue is proper in this district, and denies KemPharm's motion to dismiss on this ground.

### IV.

KemPharm and Mickle have moved to transfer the case to the Southern District of Iowa pursuant to 28 U.S.C. § 1404(a), which it contends is a more convenient forum. However, given the presence of possible non-party witnesses in this district, the fact that Mickle contractually agreed to litigate any disputes arising out of his employment agreement here, and the fact that Shire's claims against KemPharm are intrinsically linked to its claims against Mickle, the court finds no compelling reason to transfer. Accordingly, the court denies Mickle's motion.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[5] District courts are to "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376

---

[5] As Mickle resides within the Sothern District of Iowa, venue would be appropriate there under 28 U.S.C. § 1391(a).

7

U.S. 612, 622 (1964)). These factors include "(1) the plaintiff's [initial] choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice." Precision Franchising, LLC v. Coombs, 2006 WL 3840334, at *2 (E.D. Va. Dec. 27, 2006). Additionally, the "presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." Stewart Org., Inc., 487 U.S. at 29; Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1258 (4th Cir. 1991).

Here, the parties' agreement provides for the litigation of disputes in the Western District Virginia. While not dispositive, this forum selection clause represents the parties' expressed preference of venue, and thus is entitled to substantial weight. See Stewart Org., Inc., 487 U.S. at 29, and Mickle has not demonstrated that the remaining factors strongly favor transfer. While it might be more convenient for Mickle to engage in litigation closer to home, Shire has identified several potential non-party witnesses that reside within this district that it intends to rely upon during these proceedings. See Mullins v. Equifax Info. Servs., LLC, 2006 WL 1214024, at *7 (E.D. Va. Apr. 28, 2006) ("Party witnesses are . . . presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses.") (internal quotation marks omitted). After contractually agreeing that the Western District of Virginia would have "exclusive jurisdiction for any lawsuit brought to enforce any right[s] or obligations arising under" his agreement, (Compl. Ex. 1 at ¶ 13(a),) Mickle is not entitled to have the case transferred simply because doing so would be more convenient for him.

KemPharm also has failed to present a compelling case for transfer. Since Mickle, KemPharm's president, must defend against Shire's contract claims in this forum, and since Mickle is no doubt an essential witness as to Shire's tortious interference claim against

8

KemPharm, as well, KemPharm has fallen well short of demonstrating a compelling reason to transfer. See United States v. Douglas, 626 F. Supp. 621, 625 (E.D. Va. 1985) ("In view of the fact that the balance of convenience must be strongly in favor of the defendant to upset plaintiff's choice of venue, and the general preference in the federal courts for unitary adjudication, severance for purposes of transfer under § 1404(a) is rarely appropriate.") (quoting 3A MOORE'S FEDERAL PRACTICE ¶ 21.05(2) (2d ed. 1985)).

For these reasons, the court finds that KemPharm and Mickle have not met their burden of demonstrating that transfer is warranted. Therefore, the court denies their motion to transfer the case to the Southern District of Iowa.

V.

For the reasons stated above, the court denies KemPharm's motion to dismiss for lack of personal jurisdiction or for improper venue, and KemPharm's and Mickle's joint motion to transfer.

**ENTER:** February 11, 2011.

_____
UNITED STATES DISTRICT JUDGE