CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 10 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHIRE LLC, | ) |
| | ) Civil Action No. 7:10-cv-00434 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| TRAVIS C. MICKLE, PH.D., et al. | ) |
| | ) By: Samuel G. Wilson |
| Defendants. | ) United States District Judge |

This is a diversity action by Shire LLC ("Shire"), a subsidiary of an international pharmaceutical company, against defendants KemPharm, Inc. ("KemPharm"), a small early phase biopharmaceutical company, and Travis Mickle, KemPharm's president, alleging that Mickle breached an employment agreement, five assignment agreements, and a settlement agreement between Shire and Mickle, and that KemPharm tortiously interfered with these contracts.[1] Mickle has answered and asserted six counterclaims against Shire. The first four counterclaims seek declarations that Mickle either did not breach those contracts, or that they are not enforceable. The fifth counterclaim alleges that Shire breached the settlement agreement, and the sixth alleges that Shire slandered Mickle. Shire has moved to dismiss Mickle's counterclaims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). The court finds that all of the Mickle's counterclaims raise plausible claims for relief except one. Accordingly, the court denies Shire's motion to dismiss all but that counterclaim.

---

[1] KemPharm is an Iowa corporation with its principal place of business in North Liberty, Iowa. Mickle is a resident and citizen of Iowa. Shire LLC is a limited liability company organized under the laws of Kentucky. Shire LLC's sole member is Shire U.S., Inc., which is a corporation organized under the laws of New Jersey with its principal place of business in Pennsylvania. Therefore, there is complete diversity between the parties. The amount in controversy exceeds $75,000. Accordingly, jurisdiction is appropriate under 28 U.S.C. § 1332.

# I.

The events giving rise to this suit began in 2001, when Mickle was hired as a scientist by New River Pharmaceuticals, Inc. ("NRP"). Shire later acquired NRP in 2007, making Shire NRP's successor in interest. When Mickle joined NRP, he signed an employment agreement which provided, in part, that Mickle would not exploit confidential information he learned in the course of his employment after he left the company. Mickle went on to develop several patents while working for NRP, and later executed assignment agreements transferring to NRP all of his rights in these patents, as well as the right to develop future patents based on these patents.

Eventually Mickle and NRP parted ways and entered into a settlement agreement. This settlement agreement contained a clause prohibiting NRP from making "disparaging, demeaning or derogatory remarks" regarding Mickle or Mickle's business, and also provided that the terms of the agreement were to remain confidential.

In 2006, Mickle incorporated KemPharm and appointed himself president. KemPharm is an early phase biopharmaceutical company that focuses on the development of new drugs. After incorporating KemPharm, Mickle filed several new patent applications, and assigned all of his interest in those applications to KemPharm. Shire's complaint alleges that these actions violated the terms of the assignment agreements entered into by Mickle and NRP.

In 2009, KemPharm and Shire entered negotiations regarding the potential sale of KemPharm to Shire. During these negotiations, Shire says it discovered that several of KemPharm's new drugs were based on intellectual property that Shire acquired when it purchased NRP. In March 2010, Michael Cola, President of Shire Specialty Pharmaceuticals and a member of Shire's senior management team, gave a presentation at the Cowen and Company

Healthcare Conference ("Conference") in Boston, Massachusetts. During a question and answer session following his presentation, Cola responded to a question about KemPharm[2] by stating:

> Sure. For those of you [who] don't know, KemPharm is led by an ex-New River person. His name is on the intellectual property associated with VYVANSE. I'll tell you – how we feel at Shire, that intellectual property associated with his Phase I study is something we own. It's based on the IP that we acquired, when we acquired New River Pharmaceuticals. And we've had numerous talks with them. I think they understand the situation and they continue to go forward, but at the end of the day, when you see that product, think of it as Shire's intellectual property.

(Countercl. ¶ 73.)

Shire later brought this action against Mickle, alleging that Mickle breached his employment, assignment, and settlement agreements with NRP. In response, Mickle filed an answer and six counterclaims. Counterclaims I-IV seek declarations that Mickle did not breach these agreements or that they are unenforceable. Counterclaim V alleges that Shire breached the settlement agreement by making disparaging statements about Mickle and by not filing certain documents in this case under seal. Counterclaim VI seeks damages for slander based on Cola's comments made at the Conference.

## II.

Shire has moved to dismiss Mickle's counterclaims seeking declaratory relief, arguing that that they are unnecessarily duplicative of Mickle's answer and affirmative defenses. The court finds the argument specious. Mickle is entitled to seek more than simply a defensive victory. He is entitled to settle and clarify the broader controversy, something the resolution of Shire's breach-of-contract claims may or may not accomplish. In contrast, a declaratory judgment will serve a useful purpose in clarifying the rights of the parties and removing the

---

[2] The record before the court does not disclose the precise question asked of Cola. Mickle alleges that it was a question regarding intellectual property owned by KemPharm; however, the transcript of the question and answer session notes only that the question was "inaudible." (Pl.'s Mot. to Dismiss Ex. A, at 7.)

specter of uncertainty. Accordingly, the court finds that it is appropriate to exercise jurisdiction over these counterclaims and denies Shire's motion to dismiss.[3]

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A federal district court may exercise jurisdiction over a claim for declaratory judgment if:

> (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation marks omitted). If the first two elements are satisfied, "a district court must have 'good reason' for declining to exercise its declaratory judgment jurisdiction." Id. at 594. If "declaratory relief 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding,'" the court should retain jurisdiction over the claims. Id. (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

Here, the first two elements are satisfied: Mickle's counterclaims allege an actual controversy regarding whether the contracts between Mickle and Shire have been breached, and the parties are completely diverse. Therefore, the issue is still to whether Mickle's declaratory judgment counterclaims serve a "useful purpose," or whether deciding those claims on the merits

---

[3] To survive a Rule 12(b)(6) motion, the pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (citation omitted). While the court must accept the claimant's factual allegations as true, Hemi Group, LLC v. City of N.Y., 130 S. Ct. 983, 986–87 (2010), this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

4

would only waste the resources of the parties and the court. The court finds that Mickle's counterclaims serve a "useful purpose" here. Under the circumstances alleged here, Mickle has an interest, independent of Shire's claims, in obtaining a judgment on the merits in this case. Mickle, is KemPharm's president, and Shire has challenged the propriety of his conduct and the validity of the transfer of his property to KemPharm, both in this lawsuit and in statements made by one of Shire's officers at an industry conference. It is certainly reasonable for Mickle's potential business partners to want assurances that Mickle did not breach his contracts and that KemPharm owns what it says it owns. Additionally, Shire has not shown that dismissing the claims would materially increase the efficiency of these proceedings, as the parties will be litigating these same issues in any event.[4]

Because the exercise of jurisdiction over Mickle's counterclaims is warranted under these circumstances, the court denies Shire's motion to dismiss Mickle's claims for declaratory relief.

### III.

Shire has moved to dismiss Mickle's defamation counterclaim on the ground that the comments made by Cola at the Conference were statements of pure opinion, which are not defamatory as a matter of law. However, the court finds that Cola's statements were not unambiguous expressions of opinion, and can plausibly be interpreted as factual statements regarding who owns the intellectual property at issue in this case. Accordingly, the court denies Shire's motion to dismiss this counterclaim.

As Cola's statements were made in Massachusetts, both parties agree that the law of that state governs Mickle's defamation claim under Virginia's choice of law rules. See Consulting

---

[4] The court further notes that neither party's conduct in this case so far indicates that they are terribly concerned with the need for judicial efficiency. While Twombly and Iqbal may have heralded a change in pleading dynamics, Shire's thirty-five page complaint and Mickle's seventy-five page answer and counterclaims are nonetheless a direct assault on Rule 8's requirement that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

5

Eng'rs, 561 F.3d 273, 280 n.6 (4th Cir. 2009). In Massachusetts, the court must consider as a threshold matter in a defamation case whether the "communication is reasonably susceptible of a defamatory meaning" as a matter of law. Phelan v. May Dep't Stores Co., 443 Mass. 52, 56 (2004).[5] Statements of "pure opinion" are constitutionally protected, and therefore cannot form the basis for a defamation claim. King v. Globe Newspaper Co., 400 Mass. 705, 708-09 (1987) (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974)). If the statement can reasonably be interpreted as either a factual statement or an opinion, a question of fact exists. Id. at 709. In making this determination, the court looks at the totality of the circumstances. Id. A statement preceded by cautionary terms, such as "in my opinion," can still be actionable if it nonetheless presents or implies facts. See Howell v. Enter. Publ'g Co., 455 Mass. 641, 671 (2010) (identifying cautionary terms as only one of several factors to consider in determining whether a statement constitutes an opinion).[6]

The court has reviewed Cola's statement and the alleged circumstances under which it was made, and finds that it may plausibly be interpreted as a statement of fact. Despite Cola's prefatory language, a reasonable person could nonetheless have interpreted his comments that followed as a factual statement regarding the ownership of the intellectual property at issue. Because there is a material issue of fact, the court denies Shire's motion to dismiss Mickle's defamation counterclaim.

---

[5] As the allegedly defamatory statements were made in Massachusetts, Mickle's defamation claim is analyzed under the law of that state under Virginia's choice of law rules. See Consulting Eng'rs, 561 F.3d 273, 280 n.6 (4th Cir. 2009).

[6] See also Flotech, Inc. v. E.I. Du Pont de Nemours & Co., 814 F.2d 775, 777 (1st Cir. 1987) (noting that it was "inconclusive" whether a statement in a press release constituted a pure opinion despite the fact that the statement was preceded by cautionary language).

# IV.

Shire has moved to dismiss Mickle's claim that it breached the non-disparagement clause contained in the settlement agreement on the ground that Cola's comments were not "disparaging, demeaning, or derogatory," and therefore did not violate that agreement. However, the court finds that Mickle has pleaded facts that render his claim plausible, and therefore denies Shire's motion to dismiss the counterclaim.

The settlement agreement provides that any disputes under the agreement are to be governed by Virginia law. (Settlement Agreement ¶ 12.) In Virginia, the elements of a breach of contract action are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 267 Va. 612, 619 (2004). The settlement agreement provides in part:

> You agree that you will refrain from making any comments that are, or are intended to be, detrimental, injurious or derogatory to the interests of New River or any of its affiliates, or to the business or personal reputations of any of their current or former directors, officers, or employees. Similarly, the members of senior management of New River shall refrain from making disparaging, demeaning or derogatory remarks that are intended to injure your business or personal reputation, and members of senior management shall refrain from directing or encouraging others to do the same.

(Settlement Agreement ¶ 8.)

Shire's argument that there was no breach of this provision because Cola's comments at the Conference are not capable of being construed as "disparaging, demeaning or derogatory" toward Mickle, whom Cola did not specifically name in his response to the audience member's question, is unpersuasive. While Cola did not refer to Mickle by name, he overtly referred to Mickle when he said, "KemPharm is led by an ex-New River person. His name is on the intellectual property associated with VYVANSE." Further, a reasonable insinuation from Cola's

7

statement is that Mickle and KemPharm had misappropriated Shire's intellectual property, an accusation which necessarily called Mickle's character into question.

For these reasons, Mickle has alleged facts that render his breach of contract claim plausible. Accordingly, the court denies Shire's motion to dismiss this counterclaim.

## V.

Mickle also maintains that Shire committed an additional breach of the settlement agreement when it failed to file that agreement under seal in this case. The court finds that Mickle has not stated a plausible claim for relief as to this claim.

The confidentiality clause of the settlement agreement provides, in part:

> The terms and conditions of this Agreement are strictly confidential. Accordingly, you agree not to disclose this Agreement or the terms and conditions of this offer to any third party . . . except in the course of a judicial proceeding relating to the enforcement of this Agreement . . . . The Company will keep this confidential as well, except that the Company may disclose information about this Agreement . . . as may be determined . . . necessary or appropriate for a proper corporate purpose.

(Settlement Agreement ¶ 2.) Mickle's counterclaim asserts that Shire breached this confidentiality provision by filing the settlement agreement publicly, and not under seal, as an exhibit to its initial complaint in this case.

The court finds that Mickle has not plausibly alleged that Shire's actions caused him to suffer any injury. In describing his damages, Mickle's breach of settlement agreement counterclaim states only that "Shire's statement [at the Conference] . . . have damaged Dr. Mickle's reputation and/or business interests . . . ." (Contercl. ¶ 83.) There is no allegation that Mickle has been injured by Shire's public disclosure of the settlement agreement.[7] Even if

---

[7] Mickle cites Toon v. Wackenhut Corr. Corp., 250 F.3d 950 (5th Cir. 2001), for the proposition that failing to file a settlement agreement under seal may violate a confidentiality clause contained in that agreement. However, the settlement agreement in Toon specifically contemplated that any future court filings would be filed under seal, that confidentiality was "at the heart of the settlement agreement," and that there was "no good faith reason for counsel

8

Mickle was injured by the public disclosure, Mickle has not sufficiently alleged facts to support its claim that Shire caused that injury. Under Rule 9(a) of the Western District of Virginia's Local Rules, "[a] document . . . may be filed or placed under seal *only if permitted by order of the Court*." (emphasis added). It is not readily apparent to the court why such an order would be justified here, and, in any event, the court is not inclined to speculate as to what it would have done had Shire filed such a motion. Cf. Hinkle Oil & Gas, Inc. v. Bowles Rices McDavid Graff & Love, LLP, 617 F. Supp. 2d 447, 452 (W.D. Va. 2008) (granting summary judgment against the plaintiff because the plaintiff's claims required the court to speculate on what the bankruptcy court would have decided if faced with different facts). Therefore, the court finds that Mickle has not alleged facts that would plausibly support his claim that Shire's failure to move to file the settlement agreement under seal caused Mickle any injuries. Accordingly, the court grants Shire's motion to dismiss Mickle's claim that it breached the confidentiality provisions of the settlement agreement.

## VI.

For the reasons stated above, the court denies Shire's motion to dismiss Mickle's counterclaims as to all claims except the breach of contract claim based on the confidentiality provisions of the settlement agreement.

**ENTER:** March 10, 2011.

UNITED STATES DISTRICT JUDGE

---

not to have filed the motion . . . under seal." Toon, 250 F.3d at 953. Additionally, the public disclosure of the settlement agreement in that case caused the defendant to suffer "irreparable and irreversible" injury. Id. at 954. Unlike the defendant in Toon, Mickle has not alleged any such injury resulting from Shire's conduct in this case.