CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 15 2011

JULIA C. DUDLEY, CLERK
BY: 
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SHIRE LLC, | ) | |
| | ) | Civil Action No. 7:10-cv-00434 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| TRAVIS C. MICKLE, PH.D., et al. | ) | |
| | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

This is a diversity action by Shire LLC ("Shire"), a subsidiary of an international pharmaceutical company, against defendants KemPharm, Inc. ("KemPharm"), a small early phase biopharmaceutical company, and Travis Mickle, KemPharm's president, alleging that Mickle breached an employment agreement, five assignment agreements, and a settlement agreement between Shire and Mickle, and that KemPharm tortiously interfered with these contracts. KemPharm and Mickle answered and filed numerous counterclaims seeking declaratory judgments that Mickle did not breach these agreements, and that KemPharm validly owns the intellectual property at the heart of this suit. KemPharm and Mickle also claim that public statements by one of Shire's officers casting doubt on the validity of KemPharm's ownership of this intellectual property constituted slander and tortious interference with prospective business advantage and that these statements, coupled with Shire's filing of its allegedly meritless complaint in this action, constitute unfair competition and violations of Section 2 of the Sherman Act, 15 U.S.C. § 2.

This matter is currently before the court on Shire's motion to stay and sever KemPharm's tortious interference, unfair competition, and Sherman Act counterclaims pursuant to Federal Rules of Civil Procedure ("Rules") 21 and/or 42(b) pending the resolution of Shire's breach of

contract claims. From a close review of the parties' pleadings and claims, the court considers the resolution of Shire's contract claims to be pivotal, if not dispositive, of KemPharm's and Mickle's counterclaims arising out of the statements of Shire's officer, as well as their claims that Shire's suit is "sham litigation," and finds that there are significant efficiencies to be had in bifurcating these claims and staying discovery on them. Accordingly, pursuant to Rule 42(b), the court grants Shire's motion to bifurcate and stay these counterclaims. Additionally, because Mickle's slander and breach of the disparagement clause of the settlement agreement, and KemPharm's slander, counterclaims intertwine with the other bifurcated and stayed claims, the court *sua sponte* bifurcates and stays these counterclaims as well.[1]

## I.

The court described the facts of this case in some detail in its two previous opinions,[2] and therefore only briefly recounts those relevant to Shire's current motion. Mickle formerly worked as a scientist for New River Pharmaceuticals, Inc. ("NRP"), where he played a role in developing several patents for the company. Mickle executed a series of agreements assigning his interests in these patents to NRP. Upon beginning at NRP, Mickle had also entered into an employment agreement with the company, which provided that he would refrain from utilizing NRP's proprietary information for his own personal benefit. When Mickle and NRP parted ways, they entered into a settlement agreement that reaffirmed this duty.

After leaving NRP, Mickle incorporated KemPharm in 2006. Mickle subsequently filed several patent applications, and assigned his interest in these applications to his new company. In 2007, Shire purchased NRP, and in 2009, entered into negotiations to purchase KemPharm as

---

[1] Shire has also moved to dismiss these claims pursuant to Rule 12(b)(6). Because these claims may be rendered moot depending on the resolution on the underlying breach of contract claims, the court denies this motion without prejudice as premature.

[2] See Shire LLC v. Mickle, 2011 WL 863503 (W.D. Va. Mar. 10, 2011) & 2011 WL 607716 (W.D. Va. Feb. 11, 2011).

2

well. Those negotiations went poorly, and Shire began publicly taking the position that Mickle had derived KemPharm's new intellectual property from the NRP patents in breach of the employment, settlement, and assignment agreements. In March 2010, Michael Cola, President of Shire Specialty Pharmaceuticals and a member of Shire's senior management team, gave a presentation at the Cowen and Company Healthcare Conference in Boston, Massachusetts where he publicly announced that Shire believed it owned KemPharm's patents. Cola repeated the substance of these remarks at a January 2011 healthcare conference in San Francisco, California.

Shire filed this suit, alleging that Mickle derived these new patents from the NRP patents in breach of the employment, settlement, and assignment agreements. Shire also alleged KemPharm tortiously induced Mickle into breaching these contracts. Mickle asserted several counterclaims seeking declaratory judgments that he did not breach any of these agreements, and that Cola's statements constituted slander and breached a non-disparagement clause in the settlement agreement. KemPharm counterclaimed for declaratory judgments that it did not tortiously interfere with Mickle's contracts and that it validly owns the patents in question.[3] Based on Cola's statements and Shire's decision to initiate what KemPharm labels "sham litigation," KemPharm also asserted counterclaims for slander of title, tortious interference with prospective business advantage, unfair competition, and unlawful monopolization and attempted monopolization in violation of the Sherman Act.

## II.

Shire has moved to stay, sever, and/or bifurcate KemPharm's tortious interference, unfair competition, and Sherman Act counterclaims under either Rule 21 or 42(b), arguing that they involve a different set of facts and legal issues than Shire's breach of contract claims. Shire also

---

[3] KemPharm also named three additional parties, Shire Pharmaceuticals, Inc., Shire US, Inc., and Shire plc, as counterclaim defendants.

notes that these counterclaims may be rendered moot if Shire prevails on the underlying contract claims. KemPharm has opposed the motion, arguing bifurcating these sets of claims will cause additional and unnecessary discovery expenses. The court finds that, given the rapidly increasing complexity of this case, it would be more efficient and convenient, and less confusing and prejudicial, to bifurcate and separately try all of both parties' claims stemming from Cola's statements and Shire's decision to file this case.

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims."[4] "It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties." 9A Charles Alan Wright & Arthurt R. Miller, Federal Practice & Procedure § 2388 (3d ed.). "The party requesting separate trials [under Rule 42(b)] bears the burden of showing that bifurcation would '(1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party.'" Hogan v. Fairfax Cnty. Sch. Bd., 2008 WL 4924692, at *1 (E.D. Va. Nov. 13, 2008) (quoting F & G Scrolling Mouse, LLC v. IBM Corp., 190 F.R.D. 385, 387 (M.D.N.C. 1999)). The court has the implicit authority to limit discovery as to any segregated issues so as to minimize and defer "costly and possibly unnecessary discovery proceedings pending resolution of potentially

---

[4] Regarding the decision to proceed under Rule 21 or 42(b), district courts should bifurcate claims under Rule 42(b), rather than sever them under Rule 21, when they "are factually interlinked, such that a separate trial may be appropriate, but final resolution of one claim affects the resolution of the other." Gaffney v. Riverboat Servs. of Ind., Inc., 451 F.3d 424, 442 (7th Cir. 2006). The court finds that severance under Rule 21 is not appropriate in this case, as the resolution of Shire's breach of contract claims may affect the resolution of many of Mickle and KemPharm's counterclaims. See Gaffney, 451 F.3d at 442. For example, a factual determination of whether Mickle breached his contracts will ultimately affect the resolution of the slander, tortious interference, unfair competition, and Sherman Act counterclaims may in fact be dispositive of some of these counterclaims. Therefore, the court instead evaluates whether bifurcation under Rule 42(b) furthers the interests of convenience and economy, and avoids prejudice to either party.

4

dispositive preliminary issues." Ellingson Timber Co. v. Great N. Ry. Co., 424 F.2d 497, 499 (4th Cir. 1970).

Many of Mickle and KemPharm's counterclaims have little in common with Shire's breach of contract claims, other than that they are both part of a larger ongoing commercial dispute between the parties. While the resolution of many of the counterclaims may be affected by the resolution of the breach of contract claims, neither the facts nor the legal issues underlying those claims appear to be inextricably intertwined. KemPharm's slander, tortious interference, unfair competition, and Sherman Act counterclaims, as well as Mickle's slander and related breach of settlement agreement counterclaims, all involve Cola's statements at two healthcare conferences, and questions regarding Shire's intent in instigating this litigation. None of these facts or issues are material, or perhaps even relevant, to the core issues of whether Mickle breached the employment, assignment, or settlement agreements in developing the intellectual property he later assigned to KemPharm. The issues relating to these counterclaims are potentially complex, particularly with regard to KemPharm's monopolization claims, and greatly expand the scope of the litigation relative to Shire's original complaint. The court finds that allowing all of these claims to be presented in a single trial would unduly complicate and confuse the proceedings, and would force the parties to proceed with expensive discovery that may be rendered useless depending on the resolution of the underlying contract issues. While KemPharm argues multiple rounds of discovery would lead to a wasteful duplication of resources, the court believes the risk of such duplication is minimal, and is greatly outweighed by the potential benefits of bifurcating these claims and resolving the core dispute between the parties - the breach of contract claims - in a more efficient and expeditious manner. Concerns of fairness also favor bifurcation, as asking a jury to determine whether Shire's claims represent

"sham litigation" at the same time as the jury is asked to decide the merits of those claims may result in prejudice to Shire. Although KemPharm argues that it has a strong interest in quickly resolving the dispute over its property rights given its status as a vulnerable start-up company, the court finds that bifurcating the claims as the court has indicated is more likely to expedite the resolution of the central, pivotal, and perhaps even dispositive question concerning the intellectual property rights in issue.

## III.

For these reasons, the court grants Shire's motion to bifurcate and stay discovery as to KemPharm's tortious interference, unfair competition, and Sherman Act counterclaims.[5] Additionally, the court finds that KemPharm's slander counterclaim,[6] and Mickle's slander and breach of the disparagement clause of the settlement agreement counterclaims based on Cola's statements at the two healthcare conferences[7] also involve distinct questions of fact and law relative to Shire's breach of contract claims, and *sua sponte* bifurcates and stays discovery as to these claims.

**ENTER:** July 15, 2011.

UNITED STATES DISTRICT JUDGE

---

[5] These are labeled Counts IV-VII of KemPharm's counterclaim.
[6] This is labeled Count III of KemPharm's counterclaim.
[7] These are labeled Counts V and VI of Mickle's counterclaim.