# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **SHIRE LLC,** | ) | |
| | ) | **Civil Action No. 7:10-cv-00434** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **TRAVIS C. MICKLE, et al.** | ) | |
| | ) | **By: Samuel G. Wilson** |
| **Defendants.** | ) | **United States District Judge** |

This is a diversity action by Shire LLC ("Shire"), a subsidiary of an international pharmaceutical company, against defendants KemPharm, Inc. ("KemPharm"), a small early phase biopharmaceutical company, and Travis Mickle, KemPharm's president, alleging that Mickle breached an employment agreement, five assignment agreements, and a settlement agreement between Shire and Mickle, and that KemPharm tortiously interfered with these agreements. This matter is currently before the court on Mickle's and KemPharm's motion under Federal Rule of Civil Procedure 12(c) for a judgment on the pleadings that the agreements contain invalid and unenforceable restrictive covenants. Even assuming that the challenged provisions constitute restrictive covenants, the court finds that it cannot evaluate their validity without a more fully developed factual record. Accordingly, the court denies the motion.

## I.

In early 2001, Mickle entered into an employment agreement with Lotus Biochemical Corporation ("Lotus"), and he began working for Lotus as a senior research scientist. New River Pharmaceuticals, Inc. ("NRP"), is a successor in interest to Lotus, and Shire is a successor in

interest to NRP. [1] Shire claims that Mickle breached three provisions of his employment

agreement.

The first provision at issue, paragraph 4, is entitled "Ownership of Materials" and

provides in part:

> All documents, diagrams, formulations, records, customer lists, Discoveries (as defined in Section 7 hereof), equipment, and other items provided by the Company and held in the possession of Employee, and other materials, in any form, which in any way relate to the Company's past, present or potential business and which were prepared or received by the Employee in the course of the Employee's employment are the exclusive property of the Company.

(Employment Agreement ¶ 4.) The second provision at issue, paragraph 6, is entitled

"Confidential Information" and provides in part:

> Employee Agrees that at all times while employed by the Employer and thereafter, Employee will not use for Employee's own personal benefit or for the benefit of others or disclose to any other person, corporation or other entity for any reason any of the Confidential Information, without the prior written consent of the Board of Directors of the Company. "Confidential Information" as used in this Agreement, will include: [1] this Agreement and all provisions hereof, [2] all information acquired by Employee from the Company, its suppliers, advertisers, customers, or others during Employee's employment which relates to the Company's past, present or potential business, such as programs, files, personnel information, Discoveries (as defined in Section 7 hereof) to the extent not disclosed to the public by the Company . . . design documents, technical information or material . . . as well as the Company's past, present or future research and development . . . .

(Id. ¶ 6.) The final contested provision of Mickle's employment agreement, paragraph 7, is

entitled "Discoveries" and provides in part:

> All Discoveries are the exclusive property of the Company, and Employee will promptly and fully disclose them to the Company. As used herein, the term "Discoveries" means all discoveries, inventions, improvements, processes, ideas and names in any form, whether or not patentable or copyrightable . . . as well as all Intellectual Property (as defined herein), which relate to or are useful to the Company's business which Employee alone or with others may invent, discover, make or conceive whether the Company's facilities are used or not . . . . "Intellectual Property" means all current and future worldwide patents and other

---

[1] Shire purchased NRP in 2007.

patent rights, inventions, copyrights, trade secrets, trademarks, know-how, utility models and other intangible proprietary rights, including, without limitation, all applications and registrations with respect thereto. At any time, at the Company's request and expense, Employee will, without further compensation (i) promptly record such Discoveries; (ii) execute any assignments and other documents that the Company deems desirable to protect its rights in the discoveries; and (iii) assist the Company in enforcing its rights with respect to these Discoveries. These obligations will survive termination of employment.

(Id. ¶ 7.) The employment agreement expressly provides that Mickle's obligations under

paragraphs 4, 6, and 7 survive the termination of Mickle's employment. (Id. ¶ 14(g).)

While at NRP, Mickle also applied for several patents that resulted from his work for the

company. In connection with these patent applications, Mickle executed five assignment

agreements assigning his interests in those patents to NRP. Those assignment agreements

provide, in part:

> [W]e do hereby sell, assign and transfer unto said ASSIGNEE . . . our entire right, title and interest in and throughout the United States of America . . . and all countries foreign thereto and to said improvements, said United States application, any other United States applications, including provisional, divisional, renewal, substitute, continuation, reexamination and reissue applications, based in whole or in part on said United States application or in whole or in part on said improvements, any foreign applications, including international and regional applications, based in whole or in part on any of the aforesaid United States applications or in whole or in part on said improvements, and in and to any and all letters patent, including extensions thereof, of any country which have been or may be granted on any of the aforesaid applications or on said improvements or any parts thereof . . . .

(Pl.'s Mot. for J. on the Pleadings, Ex. 2-6 ("Assignment Agreements").) Shire claims Mickle

breached these provisions by developing new intellectual property based on the assigned patents

after he left NRP, and assigning his interests in those new patents to his new company,

KemPharm, instead of NRP.

In 2005, Mickle left NRP and entered into a settlement agreement with the company.

That agreement reiterates that Mickle's obligations under certain provisions of the employment

agreement, including paragraphs 4, 6, and 7, survive his termination. Shire alleges that Mickle's

breaches of paragraphs 4, 6, and 7 of the employment agreement also constitute breaches of the settlement agreement.

## II.

Mickle and KemPharm have moved for judgment on the pleadings pursuant to Rule 12(c), arguing that the relevant contract provisions constitute facially unenforceable restrictive covenants under Virginia law. Assuming, *arguendo*, that these provisions are properly considered to be restrictive covenants, the court finds that determining whether they are unreasonable restrictions and therefore unenforceable requires a more fully developed factual record. Consequently, the court denies Mickle's motion.

"On a motion for judgment on the pleadings made pursuant to Rule 12(c), only the pleadings are considered," A.S. Abell Co. v. Balt. Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964), and the court must draw all reasonable factual inferences in favor of the nonmoving party. See Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999) (applying the same standard in reviewing a Rule 12(c) motion as it would a Rule 12(b)(6) motion). Under Virginia law, "[a] non-competition agreement between an employer and an employee will be enforced if the contract is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc., 270 Va. 246, 249 (2005). However, whether a court will enforce or invalidate a "restrictive covenant" in equity is often a fact-laden inquiry. Foti v. Cook, 220 Va. 800, 805 (1980) (noting that "whether restrictive covenants in an employment contract will be enforced in equity depends upon the facts in the particular case"); see also Decision Insights, Inc. v. Sentia Grp., Inc., 311 Fed. App'x 586, 598 (4th Cir. 2009) (reversing the trial court's determination that a non-compete

provision was unenforceable and instructing the trial court to weigh the "competing interests of

the employer and the employee").

The court finds that the pleadings fail to provide sufficient context for the court to make

the fact-laden inquiry required to determine the reasonableness of the contract provisions in

question. While courts have found broadly worded noncompete agreements without express

geographic or temporal limitations facially invalid, see, e.g., Cantol, Inc. v. McDaniel, 2006 WL

1213992, at *6 (E.D. Va. Apr. 28, 2006), the Virginia Supreme Court has not held that the

absence of those express limitations renders confidentiality clauses or assignment agreements,

such as those at issue in this case, invalid *per se*.[2] Accordingly, the court finds that the record

requires further factual development to assess the reasonableness of the challenged provisions,

and denies the defendants' motion for judgment on the pleadings.

## III.

For the reasons stated above, the court denies the defendants' motion for judgment on the

pleadings pursuant to Rule 12(c).

**ENTER**: August 2, 2011.

, UNITED STATES DISTRICT JUDGE

---

[2] Mickle cites two Virginia Circuit Court cases that applied the exact same analysis to confidentiality provisions as would normally apply to covenants not to compete. See BB&T Ins. Servs. v. Thomas Rutherfoord, Inc., 2010 Va. Cir. LEXIS 25, at *11-12 (Va. Cir. Ct. Feb. 9, 2010); Lasership v. Watson, 2009 WL 7388870, at *8 (Va. Cir. Ct. Aug. 12, 2009). "[F]ederal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion," Burris Chem., Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir. 1993), and the court is unwilling to predict that the Virginia Supreme Court would adopt the position of these courts in light of other precedent suggesting that confidentiality clauses need to be analyzed under somewhat different standards. See Roto-Die v. Lesser, 899 F. Supp. 1515, 1523 (W.D. Va. 1995) (noting that the "difference in purpose" between a nondisclosure provision and a noncompete provision indicates the "necessity for different treatment") (citing Eden Hannon & Co. v. Sumitomo Trust & Banking Co., 914 F.2d 556 (4th Cir. 1990); see also Woven Elecs. Corp. v. Advance Grp., Inc., 1991 WL 54118, at *4 (4th Cir. Apr. 15, 1991) (noting, in applying South Carolina law in the absence of explicit guidance from the state's supreme court, that a nondisclosure agreement may be valid even though it contains no time or place restrictions).